**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
LAMAR CALDWELL,               :
                              :      Civil Action
           Petitioner,        :      1:05-CV-04972 (RBK)
                              :
      v.                      :      O P I N I O N
                              :
JONATHAN MINER,               :
                              :
           Respondent.        :
_____:
```

**APPEARANCES:**

> LAMAR CALDWELL, pro se
> #48759-066
> Federal Correctional Institution
> Fairton, NJ 08320

**ROBERT B. KUGLER, District Judge**

Petitioner LAMAR CALDWELL (hereinafter "Petitioner") currently confined at the Federal Correctional Institution, Fairton, New Jersey, filed an application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and submitted due filing fee. The application consists, in pertinent parts, of (1) Petitioner's Request for Jail Credit Time Pursuant to Title 28, § 2241 (hereinafter "Petition"),[1]

---

[1] Although Petitioner referenced to Title 26, this Court liberally construes Petitioner's application and presumes that Petitioner wished to proceed under Section 2241 of Title 28 of the United States Code rather than Title 26. A pro se habeas petition

(2) Response to Petitioner's Request for Administrative Remedy executed on December 16, 2004 (hereinafter "Administrative Response"),[2] (3) Response to Petitioner's Appeal of Administrative Response executed on January 27, 2005 (hereinafter "Appellate Response"), and (4) Response to Petitioner's Appeal to the Central Office, National Inmate Appeals, executed on July 8, 2005 (hereinafter "Central Office Response").

## BACKGROUND

The facts set forth in the Petition and in the Administrative Response appear to be consistent and could be summarized as follows:

> On November 18, 1994, [Petitioner was] arrested by the Philadelphia Police Department for various firearm offenses. These offenses . . . resulted in [Petitioner's] federal conviction. [Although] prosecution [by the City of Philadelphia] was withdrawn, [Petitioner] remained in [state] custody because [Petitioner] had several outstanding charges in . . . Pennsylvania. . . . While [Petitioner was] awaiting sentencing on [Pennsylvania] charges, [Petitioner] was produced on writ in federal court [and] received [his 250 months federal sentence imposed by Honorable Charles R.

---

and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

[2]
Apparently, the administrative decision underlying the Administrative Response was made on November 22, 2004. The Administrative Response was executed by Warden Jonathan C. Miner twenty-four days later, that is, on December 16, 2004. See Administrative Response at 1-2.

Weiner, District Judge for the Eastern District of
Pennsylvania.[3] [Since] Judge Weiner's ruling] occurred
prior to [Petitioner's] state sentence, [the ruling was
silent as to whether Petitioner's federal sentence should
run concurrently with or consecutively to Petitioner's
potential state sentence.  Petitioner was] returned to
state [custody and, on June 19, 1995, was sentenced by
the State of Pennsylvania to 7½ to 15 years to run
concurrently with his federal sentence.  Petitioner
remained in state custody until he was] paroled from
[his] state sentence on July 20, 2004. [Since,] from the
time of [Petitioner's] arrest on November 18, 1994, until
July 20, 2004, [Petitioner] remained within the primary
jurisdiction of the state of Pennsylvania, [Petitioner's
federal sentence could not have officially begun until
Petitioner was turned over to federal custody].

Administrative Response at 1, accord Pet. at 2.

Upon his arrival to the federal correctional facility and
learning that his 20-year federal sentence had just started,
Petitioner made a Request for Administrative Remedy, apparently
reasoning that, "since he has been continuously locked up from
11/18/94 to the present, . . . he [was] entitled to full jail time
credit [of his served state sentence against his federal sentence]
and . . . should be so ordered." Pet. at 2.  Petitioner's Request
for Administrative Remedy was reviewed by the Bureau of Prisons
(hereinafter "BOP") for a nunc pro tunc designation, and the bases
of denial of Petitioner's request were eventually summarized to
Petitioner in the Administrative Response which cited Barden v.
Keohane, 921 F.2d 476 (3d Cir. 1991).  See Administrative Response
at 1.

---

[3]
Judge Weiner passed away on November 9, 2005.  See 5-5
Mealey's Asb. Bankr. Rep. 17, Vol. 5, Issue 5 (Dec. 2005).

It appears that the BOP's decision was based on three grounds: (1) the very fact that Judge Weiner's sentencing order was silent as to whether Petitioner's federal and state sentences should be concurrent or consecutive, see Administrative Response at 1 ("The Judgement is 'silent' as to concurrency and is therefore considered consecutive"); accord Central Office Response ("[Petitioner's] sentence does not qualify for nunc pro tunc designation); (2) Petitioner's criminal history; see Appellate Response ("In November 2004, [Petitioner was] advised . . . that [his] request was denied based on [Petitioner's] criminal history"); and (3) Program Statement 5880.28 of Sentence Computation Manual. See Central Office Response.

Petitioner's current application seeks (1) Judge Weiner's order crediting Petitioner's federal sentence with the time served by Petitioner during his state sentence, and (2) Petitioner's inmate record being corrected accordingly. See Pet. at 2.

## JURISDICTION AND STANDARD OF REVIEW

Petitioner is seeking a writ of habeas corpus and review of an agency action. As they relate to habeas relief, this Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241, the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence. A habeas petition filed in the

district where the petitioner is confined provides a remedy to challenge the effect of events subsequent to imposition of his sentence, see Gomori v. Arnold, 533 F.2d 871, 874-75 (3d Cir. 1976), and Petitioner may properly invoke § 2241 in the instant case. Examining Petitioner's challenge, the Court is required to "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A). However, "the Court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971). Therefore, this Court must uphold the agency ruling if such construction was permissible. Cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) (outlining the two-step analysis to determine the validity of an agency regulation and of application(s) of such regulation).

## DISCUSSION

Although Petitioner's situation is not a common one, it is not unique. In fact, Barden v. Keohane, 921 F.2d 476 (3d Cir. 1991), the very case cited by the BOP in its Administrative Response to Petitioner, involved the circumstances remarkably similar to those of Petitioner's. In Barden, the petitioner

> was arrested by Pennsylvania authorities and charged with robbery, rape and kidnaping. While awaiting trial on the state charges, [the petitioner] was given over to the custody of federal authorities . . . under a writ of habeas corpus ad prosequendum. He was sentenced to a

prison term of twenty years on a bank robbery conviction by the United States District Court for the Western District of Pennsylvania and then returned to state custody.  The [State] Court . . . sentenced [the petitioner] to a term of eleven-to-thirty years on the state charges . . . , and ordered that the state sentence run concurrently with the federal sentence. [The petitioner] then began to serve his state sentence in [a s]tate [c]orrectional [i]nstitution . . . where a federal detainer was lodged against him.  . . . [The petitioner] was [eventually] paroled from state custody . . . and turned over to federal authorities under the detainer. He entered [a federal] penitentiary . . . and [after he started] serving his twenty-year federal sentence for bank robbery, [he] attempt[ed] to gain credit for the time he served in state prison by having the [s]tate [c]orrectional [i]nstitution . . . designated a federal facility <u>nunc pro tunc</u> [through an] administrative relief from the [BOP]. When these efforts failed, he sought judicial relief in the district court.

<u>Id.</u> at 478.

Reviewing the district court's decision, the Third Circuit read the issue through the prism of various provisions, including Section 3621(b) which provides, in pertinent part, that the BOP shall designate the place of the inmate's confinement after considering the following factors: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any *statement* by the court that imposed the [federal] sentence . . . ; and (5) *any* pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." <u>Id.</u> at 482 (quoting 18 U.S.C. § 3621(b)) (emphasis supplied).  The <u>Barden</u> Court observed that the statutory "history states that the listing of factors in § 3621(b) was not intended 'to restrict or limit the

[BOP] in the exercise of its existing discretion . . . , but intend[ed] . . . to set forth the appropriate factors that the [BOP] should consider in making the designations.'" Id. (quoting S. Rep. No. 98-225, 98th Cong., 2d Sess. 141, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3325, and Darsey v. United States, 318 F. Supp. 1346 (W.D. Mo. 1970)). Significantly, the Third Circuit expressly rejected the BOP's arguments that: (1) "[b]ecause there was no recommendation by the federal judge for concurrent service," such silence should be read as an indication of the federal court's intent to impose consecutive sentences; and (2) failure of state authorities to turn the petitioner over to federal custody made their intent to have the petitioner's state sentence run concurrently irrelevant. Id. The Court clarified that "[i]t [was] the federal sentencing court that lacks the power to order concurrency" in view of the fact that the federal sentencing took place prior to the state one. Id. at 483 (citing Gomori v. Arnold, 533 F.2d 871, 875 (3d Cir. 1986)). The Third Circuit expressly encouraged the BOP to seek, in such cases, the opinion of the federal sentencing judge by noting that,

> [s]ince the district judge who imposed the federal sentence on [petitioner] is no longer alive, the [BOP] cannot determine whether the sentencing judge would have wanted [the petitioner]'s federal sentence to run concurrently with whatever sentence Pennsylvania might impose after [the petitioner]'s return to state custody, as proposed in . . . the [BOP's] Program Statement. . . . [Section 3621(b)] wisely requires the [BOP] to solicit the views of the sentencing judge whenever possible . . . .

Id.   The Court concluded its thorough discussion by observing that, "under the statute and the [BOP]'s regulations, [the petitioner] is entitled to 'fair treatment' on his application for nunc pro tunc designation of the state facility as a place of confinement for his federal sentence." Id.

Applying the analytical framework of Barden to the case at bar, this Court is disturbed by the fact that the Administrative Response to Petitioner, while citing Barden, relied on the fact that Judge Weiner's order was "'silent' as to concurrency" for the BOP's conclusion that Petitioner's federal sentence should, by default, be "considered consecutive." Administrative Response at 1. This statement provided Petitioner with the very rationale expressly invalidated by the Barden Court.  Furthermore, this Court is concerned that the BOP, seemingly, made its administrative decision with regard to concurrency without seeking the opinion of Judge Weiner, even though (1) Judge Weiner was alive and available for such inquiry at the time,[4] and (2) the Barden Court expressly encouraged such inquiries in view of Section 3621(b) language. See Barden v. Keohane, 921 F.2d at 483; compare United States v. Allen, 124 Fed. Appx. 719, 2005 U.S. App. LEXIS 2233, at *3 (3d Cir. 2005) (under nearly identical circumstances, "[a]s part of its

_____

[4]

Judge Weiner passed away more than one year after Petitioner made his Request for Administrative Remedy.

discretionary analysis, . . . the BOP requested a recommendation whether [the petitioner]'s sentences should run consecutively or concurrently. [The federal sentencing judge] recommended that the federal sentence run consecutive to the state sentence.  The BOP ultimately declined to grant [the petitioner] federal credit for time served in a New Jersey state facility. ")

Granted invalidity of any reliance on the silence of Judge Weiner's sentencing order, this Court is troubled by the impression that Petitioner's application was decided by the BOP solely on the basis of two factors, that is, (1) Petitioner's criminal history, and (2) the language of a single Program Statement, that is, Statement 5880.28.   See Appellate Response; Central Office Response.   This "two-factors-based" decision runs afoul the guidance provided by the Third Circuit's recent ruling in Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005).   The Woodall Court examined the history and language of Section 3621(b) and concluded that, in making a good faith designation with respect to inmate's place of confinement, the BOP is obligated to consider all statutorily-listed factors.   See id. 432 F.3d at 239. Therefore, in line with the Appellate Court's decision in Woodall, the BOP should have made a good faith determination with regard to Petitioner's application on the basis of (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of Petitioner; and (4)

*all* pertinent policy statements.  See id. At 239.  Conversely, the BOP *should not* have relied on the fact that Judge Weiner's order was silent as to concurrency of sentences.  See Barden, 921 F.2d at 483.  Having ten years of his life riding on the BOP's decision, Petitioner was entitled to a good faith determination as to whether he could have his state correctional institution designated as a federal facility nunc pro tunc.  However, as noted by the Court of Appeals, the fact that the BOP could designate Petitioner's state correctional institution designated as a federal facility upon conclusion of a good faith review, does not mean that the BOP had to.  See id. at 484.

---

## CONCLUSION

For the reasons set forth above, the Court will liberally construe Petitioner' application and order Respondent show cause as to why a writ should not be granted.

An appropriate order accompanies this Opinion.


S/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**

Date:      April 5, 2006